FILED
CLERK, U.S. DISTRICT COURT

MAR 11 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    October 2008 Grand Jury

11   UNITED STATES OF AMERICA,     )    CR No. 08-59(B)-GW
                                   )
12                  Plaintiff,     )    S E C O N D
                                   )    S U P E R S E D I N G
13             v.                  )    I N D I C T M E N T
                                   )
14   GERALD GREEN and              )    [18 U.S.C. § 371: Conspiracy;
     PATRICIA GREEN,               )    15 U.S.C. § 78dd-2(a)(1),
15                                 )    (g)(2)(A): Foreign Corrupt
                    Defendants.    )    Practices Act; 18 U.S.C.
16                                 )    § 1956(a)(2)(A): Transportation
                                   )    Promotion Money Laundering; 18
17                                 )    U.S.C. § 1957(a):  Transaction
                                   )    Money Laundering; 18 U.S.C.
18                                 )    § 1519: Obstruction of Justice;
                                   )    26 U.S.C. § 7206(1) False
19                                 )    Subscription of a Tax Return; 18
                                   )    U.S.C. § 2: Aiding and Abetting
20                                 )    and Causing Acts To Be Done; 18
                                   )    U.S.C. § 981(a)(1)(C), 21 U.S.C.
21                                 )    § 853, and 28 U.S.C. § 2461(c):
                                   )    Criminal Forfeiture]
22   _____)

23   The Grand Jury charges:

24                    INTRODUCTORY ALLEGATIONS

25        At all times relevant to this Indictment:

26   A.   THE FOREIGN CORRUPT PRACTICES ACT

27        1.   The Foreign Corrupt Practices Act of 1977 ("FCPA"), as

28   amended, Title 15, United States Code, Sections 78dd-1, *et seq.*,

BHS:bhs *BHS*
JEL:jel *JEL*

1  was enacted by Congress for the purpose of making it unlawful,

2  among other things, for certain United States persons and

3  business entities defined as "domestic concerns" to act corruptly

4  in furtherance of an offer, promise, authorization, or payment of

5  money or anything of value to a foreign government official for

6  the purpose of securing any improper advantage, or of obtaining

7  or retaining business for and with, or directing business to, any

8  person.

9  B.    RELEVANT PERSONS AND ENTITIES

10      2.    Defendant GERALD GREEN ("GERALD GREEN") was born in

11  South Africa and was a naturalized citizen of the United States.

12  As a citizen of the United States, defendant GERALD GREEN was a

13  "domestic concern" as that term was defined in the FCPA.

14  Defendant GERALD GREEN obtained business for, and negotiated

15  contracts on behalf of, various business entities located in the

16  Central District of California collectively referenced in this

17  Indictment as the "Green Businesses."

18      3.    Defendant PATRICIA GREEN ("PATRICIA GREEN") was born in

19  Mexico and was a naturalized citizen of the United States.  As a

20  citizen of the United States, defendant PATRICIA GREEN was a

21  "domestic concern" as that term was defined in the FCPA.

22  Defendant PATRICIA GREEN was the wife of defendant GERALD GREEN.

23  Defendant PATRICIA GREEN managed the Green Businesses' day-to-day

24  operations, and was primarily responsible for approving expenses,

25  signing checks, and wiring funds from the bank accounts of the

26  Green Businesses.

27      4.    The "Green Businesses" included the following

28  California corporations and unincorporated businesses that

defendants GERALD GREEN and PATRICIA GREEN owned and operated in Beverly Hills, California:  Film Festival Management, Inc. ("FFM"); SASO Entertainment ("SASO"); Artist Design Corp. ("Artist Design"); International Fashion Consultant, Inc. ("IFC"); Flying Pen, Inc. ("Flying Pen"); and entities doing business as "Creative Ignition," "Ignition," and "International Festival Consultants."  The "Green Businesses" also included Festival of Festivals ("FOF"), a business entity belonging to an associate of defendants GERALD GREEN and PATRICIA GREEN, but in the name of which defendants GERALD GREEN and PATRICIA GREEN did business and received and transferred funds.  As entities that had their principal place of business in the United States, and that were organized under the laws of a State of the United States, the Green Businesses were "domestic concerns" as that term was defined in the FCPA.  The Green Businesses were used as vehicles to help obtain contracts and subcontracts to provide goods and services for media and entertainment projects to the government of the Kingdom of Thailand.

     5.   The Tourism Authority of Thailand ("TAT") was a government agency of the Kingdom of Thailand.  The TAT administered and funded contracts to promote tourism, including the annual Bangkok International Film Festival ("BKKIFF"), public relations services, a logo for the TAT, and websites, calendars, and videos featuring Thailand.  The TAT had a yearly budget equivalent to millions of United States dollars to disburse for the operations of the BKKIFF, and smaller amounts to fund the other TAT contracts.  The TAT also controlled an entity that was an instrumentality of the Thai government, namely, the Thailand

Privilege Card Co., Ltd. ("TPC LTD").  The TPC LTD administered and funded contracts for consulting, creative design, public relations, and promotional books for an "elite privilege card" for foreigners.

6.   The person referred to herein as the "Governor" was the senior government officer of the TAT from in or about 2002 until in or about 2006.  The Governor was responsible for the process of selecting the businesses that would provide goods and services to the TAT and TPC LTD, and for the disbursement of TAT and TPC LTD funds to those businesses.  As an officer and employee of a department, agency, and instrumentality of a foreign government, the Governor was a "foreign official" as that term was defined in the FCPA.  From in or about late 2006 to in or about 2007, the Governor, although no longer in her prior position at the TAT, acted in an official capacity on behalf of the TAT as an "advisor," and therefore was still a "foreign official" as that term was defined in the FCPA.

7.   The person referred to herein as the "Daughter" was a Thai citizen and the daughter of the Governor.  In or about 2004, the Daughter was also an employee of the TPC LTD.

8.   The person referred to herein as the "Friend" was a Thai citizen and a friend of the Governor.

C.   OVERVIEW OF TAT/TPC LTD CONTRACT REVENUES, CORRUPT PAYMENTS

9.   Beginning in or about 2002, and continuing to in or about 2007, defendants GERALD GREEN and PATRICIA GREEN, through several of the Green Businesses, received at least $14,000,000 of TAT and TPC LTD funds in connection with work performed on TAT and TPC LTD contracts, whether as a prime contractor or

subcontractor.   During that same time period, defendants GERALD
GREEN and PATRICIA GREEN sent and caused to be sent at least
$1,800,000 of those funds from the accounts of the Green
Businesses to bank accounts held in the name of either the
Daughter or the Friend at banks in Singapore, the United Kingdom,
and the Isle of Jersey, for the benefit of the Governor.   Most of
these transfers were via international wire transfers; some were
by cashiers checks.   Defendant GERALD GREEN also, on occasion,
delivered cash to the Governor in person.

10.   Defendants GERALD GREEN and PATRICIA GREEN caused these
corrupt payments, paid to and for the benefit of the Governor in
order to secure the lucrative TAT and TPC LTD contracts and
subcontracts.   These payments were disguised on the Green
Businesses' books and records as "sales commissions" in order to
conceal the nature of the payments.

D.   INCORPORATION BY REFERENCE

11.   These introductory allegations are incorporated and re-
alleged into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 371]

A.   OBJECTS OF THE CONSPIRACY

12.   Beginning in or around 2002, and continuing to in or around 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendants GERALD GREEN and PATRICIA GREEN, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

a.   As citizens of the United States and domestic concerns within the meaning of the Foreign Corrupt Practices Act, to willfully make use of means and instrumentalities of interstate and international commerce, corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official for purposes of: (i) influencing acts and decisions of such foreign official in her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use her influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist defendants GERALD GREEN, and PATRICIA GREEN in obtaining and retaining business for and with, and directing business to, the Green Businesses, in violation of Title 15, United States Code, Section 78dd-2(a)(1).

b.    To promote the specified unlawful activity referenced in paragraph A(12)(a) above by transporting funds from a place in the United States to a place outside the United States, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

B.    THE MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

13.    The Governor and defendant GERALD GREEN would and did discuss new ideas and opportunities for the Green Businesses to obtain business from the TAT and the TPC LTD.

14.    Defendants GERALD GREEN and PATRICIA GREEN would and did offer and pay bribes, directly and indirectly, to and for the benefit of the Governor in exchange for the award of lucrative contracts and subcontracts to and for the benefit of the Green Businesses.

15.    Defendant GERALD GREEN and the Governor would and did agree to the total amount of money that the TAT and the TPC LTD would and did pay to the Green Businesses.  Defendant GERALD GREEN and the Governor would and did agree to the amount of the corrupt payments to be paid to the Governor as a percentage, ranging between 10% and 20%, of the value of such contracts.  On occasion, the contracts negotiated between defendant GERALD GREEN and the Governor would and did involve third-party businesses that served as prime contractors with the TAT or the TPC LTD, and the Green Businesses as subcontractors.  On such occasions, which included contracts for the website production, public relations services, calendars, and the video production, defendant GERALD

1   GREEN would and did structure the contracting arrangements so

2   that the prime contractors would pass through to the Green

3   Businesses in the subcontracts the amounts necessary for the

4   Green Businesses to fund corrupt payments to the Governor.

5       16.   The Governor had authority to approve TAT payments to

6   foreign entities up to a certain value.   Therefore, at the

7   Governor's direction, defendants GERALD GREEN and PATRICIA GREEN

8   would and did split up the performance of large contracts for the

9   BKKIFF among different Green Businesses.   To create the

10  appearance of separate and distinct businesses, defendants GERALD

11  GREEN and PATRICIA GREEN would and did cause the Green Businesses

12  to use different bank accounts, mailing addresses, and telephone

13  numbers in their dealings with the TAT.   Some of these entities

14  and bank accounts would be and were established solely for

15  business with the TAT in connection with the BKKIFF.   However, in

16  reality, all of the BKKIFF work would be and was managed by the

17  same personnel out of the same Beverly Hills business offices at

18  the direction of, and to benefit, defendants GERALD GREEN and

19  PATRICIA GREEN.

20      17.   By the above-described use of numerous different

21  business entities in structuring contracting and subcontracting

22  for TAT and TPC LTD business, the Governor and defendants GERALD

23  GREEN and PATRICIA GREEN would and did evade requirements for

24  higher level approvals and conceal from further scrutiny and

25  suspicion by other Thai government officials the large sums of

26  TAT and TPC LTD funds flowing to the Green Businesses, a portion

27  of which would be and was for the benefit of the Governor.

28

8

18.   Defendants GERALD GREEN and PATRICIA GREEN would and did prepare and submit, and cause others to prepare and submit, to the TAT and the TPC LTD statements of the scope of work and the costs for the various services in connection with the contracts.   Defendants GERALD GREEN and PATRICIA GREEN would and did inflate the cost amounts submitted to the TAT and the TPC LTD to include the anticipated corrupt payments to the Governor, in addition to the Green Businesses' and any prime contractors' actual costs and profits.

19.   Following the Green Businesses' receipt of payment for work performed on TAT and TPC LTD contracts, defendant GERALD GREEN would and did advise defendant PATRICIA GREEN when a "commission" payment was needed for the Governor.   Defendant PATRICIA GREEN and another employee at the Green Businesses would and did then look to see which of the Green Businesses had the money available for payment.

20.   Defendants GERALD GREEN and PATRICIA GREEN would and did arrange for the corrupt payments to be made, for the benefit of the Governor, via cashiers checks or international wire transfer from the bank accounts of one or more of the Green Businesses in the Los Angeles area to bank accounts held in the name of the Daughter or the Friend at banks in the United Kingdom, Singapore, and the Isle of Jersey.   The Daughter and the Friend would and did subsequently transfer some of these funds to other overseas bank accounts held in the Daughter's name. Defendants GERALD GREEN and PATRICIA GREEN would and did also occasionally arrange for cash payments to be made directly to the Governor, including during her trips to Los Angeles, California.

21.   Defendant PATRICIA GREEN would and did maintain spreadsheets created by an employee at the Green Businesses that calculated and tracked the corrupt payments made to and for the benefit of the Governor in connection with TAT and TPC LTD contracts.

22.   Defendants GERALD GREEN and PATRICIA GREEN would and did cause the corrupt payments to, and for the benefit of, the Governor for TAT and TPC LTD contracts to be characterized as "sales commissions" on the profit and loss statements and other company books and records prepared and maintained by the Green Businesses.  Defendant PATRICIA GREEN would and did participate in the preparation of corporate tax returns that took unlawful tax deductions for the bribes by calling them "commissions" as part of costs of goods sold.  In this manner, defendants GERALD GREEN and PATRICIA GREEN would and did reduce corporate tax liabilities, use tax-free income to pay the bribes to the Governor, and thus increase their profits from the Green Businesses.

23.   In return for the corrupt payments characterized as "sales commissions," the Governor would and did assist defendants GERALD GREEN and PATRICIA GREEN in obtaining and retaining lucrative contracts and subcontracts for TAT and TPC LTD business.

24.   After the Governor stepped down in or about September 2006 as the TAT's highest-ranking official and became an "advisor" to the TAT, the Governor would and did continue to assist defendants GERALD GREEN and PATRICIA GREEN in obtaining and retaining business with the TAT, including in receiving

payment of outstanding amounts due.  The Governor would continue
to receive a portion of the money paid to the Green Businesses by
the TAT.

C.    OVERT ACTS

25.    In furtherance of the conspiracy and to accomplish its
objects, defendants GERALD GREEN and PATRICIA GREEN, together
with others known and unknown to the Grand Jury, committed and
willfully caused others to commit the following overt acts, among
others, in the Central District of California, and elsewhere:

BANGKOK INTERNATIONAL FILM FESTIVAL

Overt Act No. 1:  In or before July 2002, defendant GERALD
GREEN agreed with the Governor that defendant GERALD GREEN would
operate and manage the 2003 BKKIFF.

Overt Act No. 2:  On or about July 8, 2002, defendant GERALD
GREEN caused FFM to be incorporated in the State of California.

Overt Act No. 3:  In or before November 2002, defendant
GERALD GREEN agreed to pay a percentage of the 2003 BKKIFF
contract value for the benefit of the Governor.

Overt Act No. 4:  On or about November 8, 2002, defendant
GERALD GREEN received a facsimile from the Governor on TAT
letterhead providing wire instructions to the Daughter's bank
account at HSBC Bank PLC in the United Kingdom.

Overt Act No. 5:  On or about November 12, 2002, defendants
GERALD GREEN and PATRICIA GREEN caused a wire transfer of $30,000
from FFM's bank account at Bank of America in West Hollywood,
California, to the Daughter's bank account at HSBC Bank PLC in
the United Kingdom.

1     Overt Act No. 6:   In or before May 2003, defendant GERALD

2     GREEN agreed to pay a percentage of the 2004 BKKIFF contract

3     value for the benefit of the Governor.

4     Overt Act No. 7:   In or about June 2003, defendants GERALD

5     GREEN and PATRICIA GREEN caused an employee of SASO to execute a

6     scope of work letter agreement between SASO and the TAT for the

7     2004 BKKIFF with an attached payment schedule that included a

8     total of $468,027 in payments to SASO.

9     Overt Act No. 8:   On or about June 23, 2003, defendants

10    GERALD GREEN and PATRICIA GREEN caused an invoice on SASO

11    letterhead containing a SASO employee's home address rather than

12    SASO's office address to be sent to the TAT in the amount of

13    $24,000.

14    Overt Act No. 9:   On or about October 23, 2003, defendants

15    GERALD GREEN and PATRICIA GREEN caused a wire transfer of $12,500

16    from FFM's bank account at Bank of America in West Hollywood,

17    California, to the Daughter's bank account at HSBC Bank PLC in

18    the United Kingdom.

19    Overt Act No. 10:   On or about November 14, 2003, defendants

20    GERALD GREEN and PATRICIA GREEN caused an invoice of FFM to be

21    sent to the TAT in the amount of $63,011.

22    Overt Act No. 11:   In or before September 2004, defendant

23    GERALD GREEN agreed to pay a percentage of the 2005 BKKIFF

24    contract value for the benefit of the Governor.

25    Overt Act No. 12:   On or about October 22, 2004, defendants

26    GERALD GREEN and PATRICIA GREEN caused a wire transfer of $28,000

27    from FFM's bank account at Bank of America in West Hollywood,

28    California, to the Daughter's bank account at HSBC Bank

12

International Limited in the Isle of Jersey.

Overt Act No. 13:  On or about June 10, 2004, defendant PATRICIA GREEN opened a bank account at Wells Fargo Bank in West Hollywood, California, in the name of FOF.

Overt Act No. 14:  On or about February 24, 2005, defendants GERALD GREEN and PATRICIA GREEN caused a wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Daughter's bank account at HSBC Bank International Limited in the Isle of Jersey.

Overt Act No. 15:  On or about March 11, 2005, defendants GERALD GREEN and PATRICIA GREEN caused a wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Friend's bank account at Citibank in Singapore.

Overt Act No. 16:  In or before September 2005, defendant GERALD GREEN agreed to pay a percentage of the 2006 BKKIFF contract value for the benefit of the Governor.

Overt Act No. 17:  On or about January 19, 2006, defendants GERALD GREEN and PATRICIA GREEN caused a wire transfer of $78,000 from IFC's bank account at Wells Fargo Bank in West Hollywood, California, to the Daughter's bank account at Standard Chartered Bank in Singapore.

Overt Act No. 18:  In or about December 2006, after the Governor had stepped down in or about September 2006 as the TAT's highest-ranking official and had become an "advisor" to the TAT, and after the subsequent leadership of the TAT had terminated FFM's involvement in the BKKIFF in or about November 2006, defendant GERALD GREEN enlisted the Governor's assistance in a

claim for payment of $568,718 allegedly owed by the TAT to FFM
for work on the 2007 BKKIFF performed prior to FFM's termination.

Overt Act No. 19: In or about May 2007, after
unsuccessfully demanding from the TAT payment of the money
claimed by FFM, defendants GERALD GREEN and PATRICIA GREEN
received information indicating that TAT officials suspected
there had been corruption between FFM and the Governor and were
anxious about dealings with FFM, which information defendants
GERALD GREEN and PATRICIA GREEN then relayed to the Governor.

Overt Act No. 20: In or about June 2007, with the
Governor's assistance, defendants GERALD GREEN and PATRICIA GREEN
made secret arrangements with TAT officials to funnel payment of
the money claimed by FFM through a third-party business.

### THAILAND PRIVILEGE CARD LTD

Overt Act No. 21: In or before May 2003, defendant GERALD
GREEN agreed with the Governor that defendant GERALD GREEN would
provide and coordinate various services in connection with the
TPC LTD's introduction of an elite "privilege card" for
foreigners in Thailand.

Overt Act No. 22: In or before October 2003, defendant
GERALD GREEN agreed to pay a percentage of TPC LTD contracts'
value for the benefit of the Governor.

Overt Act No. 23: On or about November 14, 2003, defendants
GERALD GREEN and PATRICIA GREEN caused a wire transfer of $73,784
from SASO's bank account at Bank of America in West Hollywood,
California, to the Daughter's bank account at HSBC Bank PLC in
the United Kingdom.

14

Overt Act No. 24: On or about November 17, 2003, defendants GERALD GREEN and PATRICIA GREEN caused a wire transfer of $17,000 from Flying Pen's bank account at U.S. Bank in Beverly Hills, California, to the Daughter's bank account at HSBC Bank PLC in the United Kingdom.

Overt Act No. 25: On or about December 17, 2003, defendants GERALD GREEN and PATRICIA GREEN caused a cashiers check for $100,000 from SASO's bank account at Bank of America in West Hollywood, California, to be paid to the Friend.

Overt Act No. 26: On or about December 18, 2003, defendants GERALD GREEN and PATRICIA GREEN caused a cashiers check for $50,000 from SASO's bank account at Bank of America in West Hollywood, California, to be paid to the Friend.

Overt Act No. 27: On or about December 19, 2003, defendant GERALD GREEN charged $399.78 to his credit card for dinner with the Governor at L'Orangerie Restaurant in Los Angeles, California, in furtherance of his business with the TPC LTD.

### TAT PUBLIC RELATIONS

Overt Act No. 28: In or about 2004, defendant GERALD GREEN agreed to pay, for the benefit of the Governor, a portion of the value of a subcontract for international public relations consulting on behalf of the TAT.

Overt Act No. 29: On or about August 1, 2004, defendant PATRICIA GREEN signed a subcontract with a public relations firm acting as the prime contractor with the TAT, requiring that the prime contractor pay a "consulting" fee to SASO equal to 40% of the funds the prime contractor received from the TAT.

1    <u>Overt Act No. 30</u>:  On or about October 26, 2004, defendants

2    GERALD GREEN and PATRICIA GREEN caused a wire transfer of $13,000

3    from SASO's bank account at Bank of America in West Hollywood,

4    California, to the Daughter's bank account at HSBC Bank

5    International Limited in the Isle of Jersey.

6                               <u>WEBSITE</u>

7    <u>Overt Act No. 31</u>:  In or about 2005, defendant GERALD GREEN

8    agreed with the Governor that defendant GERALD GREEN would

9    recruit and coordinate a group of third-party businesses to

10   design, develop, and maintain a TAT website promoting tourism in

11   Thailand following the decrease in tourism there resulting from

12   the December 2004 tsunami.

13   <u>Overt Act No. 32</u>:  In or about 2005, defendant GERALD GREEN

14   handwrote a budget proposal for the website project providing for

15   prime contractors to bill the TAT a total of $2,000,000, with

16   $400,000 of that sum to be paid as "commissions" to "X,"

17   referring to the Governor.

18   <u>Overt Act No. 33</u>:  In or about 2005, defendant GERALD GREEN

19   directed a subordinate that the subcontracting arrangement on the

20   project should be kept secret.

21   <u>Overt Act No. 34</u>:  In or about December 2005, defendant

22   GERALD GREEN and the Governor agreed upon an adjustment to the

23   budget for the website project, which required the prime

24   contractors to increase their billing to the TAT without an

25   increase in their internal budgets.

26   <u>Overt Act No. 35</u>:  On or about December 21, 2005, defendant

27   PATRICIA GREEN sent to one of the prime contractors a subcontract

28   for Creative Ignition, requiring that the prime contractor pay a

"consulting" fee to Creative Ignition equal to 65% of the funds the prime contractor received from the TAT.

Overt Act No. 36:  On or about March 13, 2006, defendants GERALD GREEN and PATRICIA GREEN caused a wire transfer of $52,876 from FOF's bank account at Wells Fargo in West Hollywood, California, to the Daughter's bank account at Citibank in Singapore.

COUNTS TWO THROUGH TEN

[15 U.S.C. § 78dd-2(a)(1), (g)(2)(A); 18 U.S.C. § 2]

26.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants GERALD GREEN and PATRICIA GREEN, who were citizens of the United States and domestic concerns within the meaning of the Foreign Corrupt Practices Act, willfully used, and aided, abetted, and caused others to use, means and instrumentalities of interstate and international commerce, corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, and an offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official for purposes of: (i) influencing acts and decisions of such foreign official in her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use her influence with a foreign government and instrumentality thereof to affect and influence any acts and decisions of such government and instrumentality, in order to assist defendants GERALD GREEN, PATRICIA GREEN, and others known and unknown to the Grand Jury, in obtaining and retaining business for and with, and directing business to, the Green Businesses, namely, contracts and subcontracts for business with the TAT and the TPC LTD, an instrumentality of the TAT, as follows:

18

| COUNT | DATE | CONTRACT | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|---|---|---|---|
| TWO | 10/23/03 | BKKIFF | Wire transfer of $12,500 from FFM's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank PLC in the United Kingdom |
| THREE | 11/14/03 | TPC LTD | Wire transfer of $73,784 from SASO's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank PLC in the United Kingdom |
| FOUR | 11/17/03 | TPC LTD Book | Wire transfer of $17,000 from Flying Pen's bank account at U.S. Bank in Beverly Hills, California, to the Daughter's bank account at HSBC Bank PLC in the United Kingdom |
| FIVE | 10/22/04 | BKKIFF | Wire transfer of $28,000 from FFM's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank International Limited in the Isle of Jersey |
| SIX | 10/26/04 | Public Relations | Wire transfer of $13,000 from SASO's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank International Limited in the Isle of Jersey |
| SEVEN | 2/24/05 | BKKIFF | Wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Daughter's HSBC Bank International Limited bank account in the Isle of Jersey |
| EIGHT | 3/11/05 | BKKIFF | Wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Friend's bank account at Citibank in Singapore |

| | | | |
|---|---|---|---|
| NINE | 1/19/06 | BKKIFF | Wire transfer of $78,000 from IFC's bank account at Wells Fargo Bank in West Hollywood, California, to the Daughter's bank account at Standard Chartered Bank in Singapore |
| TEN | 3/13/06 | Website | Wire transfer of $52,876 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Daughter's bank account at Citibank in Singapore |

COUNTS ELEVEN THROUGH SEVENTEEN

[18 U.S.C. § 1956(a)(2)(A); 18 U.S.C. § 2]

27.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants GERALD GREEN and PATRICIA GREEN knowingly transported, transmitted, and transferred, and willfully caused others to transport, transmit, and transfer, the following monetary instruments and funds from a place in the United States, namely, Los Angeles County, to the following places outside the United States, intending that each of the transactions, in whole and in part, promote the carrying on of a specified unlawful activity, that is, bribery of a foreign official, a felony violation of the Foreign Corrupt Practices Act:

| COUNT | DATE | FOREIGN PLACE | FINANCIAL TRANSACTION |
|---|---|---|---|
| ELEVEN | 10/23/03 | United Kingdom | Wire transfer of $12,500 from FFM's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank PLC |
| TWELVE | 11/14/03 | United Kingdom | Wire transfer of $73,784 from SASO's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank PLC |
| THIRTEEN | 11/17/03 | United Kingdom | Wire transfer of $17,000 from Flying Pen's bank account at U.S. Bank in Beverly Hills, California, to the Daughter's bank account at HSBC Bank PLC |

| | | | |
|---|---|---|---|
| FOURTEEN | 10/26/04 | Isle of Jersey | Wire transfer of $13,000 from SASO's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank International Limited |
| FIFTEEN | 3/11/05 | Singapore | Wire transfer of $100,000 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Friend's bank account at Citibank |
| SIXTEEN | 1/18/06 | Isle of Jersey | Wire transfer of $40,000 from FFM's bank account at Bank of America in West Hollywood, California, to the Daughter's bank account at HSBC Bank International Limited |
| SEVENTEEN | 3/13/06 | Singapore | Wire transfer of $52,876 from FOF's bank account at Wells Fargo Bank in West Hollywood, California, to the Daughter's bank account at Citibank |

COUNT EIGHTEEN

[18 U.S.C. § 1957(a); 18 U.S.C. § 2]

28.   On or about April 1, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendants GERALD GREEN and PATRICIA GREEN, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct the following monetary transaction in criminally derived property of a value greater than $10,000, which property, in fact, was derived from a specified unlawful activity, namely, bribery of a foreign official, a felony violation of the Foreign Corrupt Practices Act:  Wire transfer in the amount of $19,800 from the Bank of America account of SASO Entertainment in West Hollywood, California to the Siam Commercial Bank account of "ConsultAsia" in Thailand.

COUNT NINETEEN

[18 U.S.C. § 1519; 18 U.S.C. § 2]

29.   In or about August 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant GERALD GREEN, knowingly and with the intent to impede, obstruct, and influence an investigation of a matter and case within the jurisdiction of the Federal Bureau of Investigation ("FBI"), altered, falsified, and made false entries in, and caused others to alter, falsify, and make false entries in, records and documents.   Specifically, believing that bribe payments made in connection with Thai government contracts were under investigation by the FBI, defendant GERALD GREEN altered and falsified film production budgets to make them appear as though they were created in 2006 in an effort to characterize bribe payments as bona fide film production expenses when, in truth and in fact, as defendant GERALD GREEN then well knew, the film production budgets were not created in 2006.

24

COUNT TWENTY

[26 U.S.C. § 7206(1)]

30.   On or about June 15, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant PATRICIA GREEN did willfully make and subscribe a U.S. Income Tax Return, Form 1120, for SASO Entertainment ("SASO"), for the tax year 2004, which was verified by a written declaration that it was made under the penalties of perjury and that was filed with the Internal Revenue Service on or about June 20, 2005, which return defendant PATRICIA GREEN did not believe to be true and correct as to every material matter, in that said return claimed SASO paid $303,074 in "commissions" deductible from SASO's gross income as costs of goods sold, whereas, as defendant PATRICIA GREEN then well knew, that figure was a false and overstated amount including bribes to a foreign official for obtaining and retaining business with SASO that were not commissions or costs of goods sold.

COUNT TWENTY ONE

[26 U.S.C. § 7206(1)]

31.   On or about March 15, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant PATRICIA GREEN, while purporting to be "Eli Boyer," the President of Film Festival Management, Inc. ("FFM"), did willfully make and subscribe a U.S. Income Tax Return, Form 1120, for FFM, for tax year 2004, which was verified by a written declaration that it was made under the penalties of perjury and that was filed with the Internal Revenue Service on or about March 22, 2006, which return defendant PATRICIA GREEN did not believe to be true and correct as to every material matter, in that said return claimed FFM paid $140,503 in "commissions" deductible from FFM's gross income as costs of goods sold and that Eli Boyer was the 100% owner of FFM, whereas, as defendant PATRICIA GREEN then well knew, the "commissions" figure was a false and overstated amount including bribes to a foreign official for obtaining and retaining business with FFM that were not commissions or costs of goods sold, and defendants PATRICIA GREEN and GERALD GREEN, rather than Eli Boyer, were the owners of FFM.

COUNT TWENTY TWO

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); 21 U.S.C. § 853]

32.   The Grand Jury hereby incorporates by reference and realleges Counts One through Ten of this Indictment, as though fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853.

33.   Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, each of defendants GERALD GREEN and PATRICIA GREEN, if convicted of any of the offenses charged in Counts One through Ten of this Indictment, shall forfeit to the United States the following property:

    a.   All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses including, but not limited to the residence located at 9019 Lloyd Place, West Hollywood, California 90069; 2001 BMW 740I, California license plate 4SVJ686, Vehicle Identification Number (VIN) WBAGG83441DN86460; and assets held in, or benefits paid from, the Artist Design Corp. dba Creative Ignition Defined Benefit Pension Plan (95-4870059).

b.   A sum of money equal to the total amount of
proceeds derived from each such offense for which
defendants GERALD GREEN and PATRICIA GREEN are
convicted, for which defendants are jointly and
severally liable.

34.   Pursuant to Title 21, United States Code, Section
853(p), as incorporated by Title 28, United States Code, Section
2461(c), each of defendants GERALD GREEN and PATRICIA GREEN, if
so convicted, shall forfeit substitute property, up to the total
value of the property described in paragraph 33, if, by any act
or omission of the defendant(s), the property described in
paragraph 33, or any portion thereof, (a) cannot be located upon
the exercise of due diligence; (b) has been transferred or sold
to, or deposited with, a third party; (c) has been placed beyond
///
///
///

the jurisdiction of the court; (d) has been substantially

diminished in value; or (e) has been commingled with other

property that cannot be divided without difficulty.

A TRUE BILL

Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section

JILL T. FEENEY
Assistant United States Attorney
Deputy Chief, Major Frauds Section

BRUCE H. SEARBY
Assistant United States Attorney
Major Frauds Section

STEVEN A. TYRRELL, Chief
MARK F. MENDELSOHN, Deputy Chief
Fraud Section, Criminal Division
U.S. Department of Justice

JONATHAN E. LOPEZ, Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice